OPINION AND ORDER

OPENING STATEMENT

This opinion addresses whether the Yu Weh Loo Pah Ki Board of Commissioners enjoys sovereign immunity from suits for injunctive relief and whether the trial court erroneously denied Appellants costs and attorney’s fees. We find in the negative on both issues and affirm the trial court’s judgment.
EACTUAL AND PROCEDI R1/ BACKGROUND
Appellant is the Yu Weh Loo Pah Ki (“YWLPK”) Community Board of Com *451 missioners (herein referred to as “Appellant”). Appellees, Joseph Laban and Brian Laban (herein referred to as “Ap-pellees”), were former employees of the YWLPK Community. They were terminated for cause from employment in September 2001. At the time of the termination, Joseph Laban’s job classification pursuant to the YWLPK Personnel Policies and Procedures Manual[1] (“PPPM”) was permanent supervisory employee and Brian Laban’s was permanent general employee. Complaint at 3; Answer at 2.
The facts giving rise to this action are as follows. Allegations of sexual harassment were brought against Joseph Laban. Ap-pellees’ Trial Exhibit (A.T.E.) # C. Thereafter, he was suspended without pay from his position as Project Manager with the YWLPK Community. Id. Based on findings of sexual harassment, the Appellant terminated Appellee from his position.[2] A.T.E. # E. Allegations of sexual harassment were also made against Brian Laban. A.T.E. # H. The Appellant voted to continue his employment on the condition that he be suspended for six months,[3] receive and show documentation for sexual harassment training (paid at his expense), and make a public apology to the employee who brought forth the allegations. Id. He was eventually terminated for failure to comply with the Appellant’s conditions. A.T.E. # H-I. The Appellant notified both employees of their terminations prior to their effective dates. A.T.E. # E, H. The Ap-pellees did not request a hearing nor did the Appellant hold one prior to or after the termination. Trial Tape 6-6 (3/6/03).
The Appellees originally filed suit against the Appellant seeking compensatory and punitive damages for the following causes of action: (1) that the Appellant violated their rights to due process under the Indian Civil Rights Act (“IGRA”) by failing to afford them grievance hearings prior to terminating their employment and (2) that the Appellant violated the PPPM by failing to impose the correct disciplinary penalty for the Appellees’ alleged misconduct and by failing to allow the Appellees the right to pursue grievance procedures under the PPPM.[4] Trial Order March 10, 2003 (T.O.) at 1-2. The Appellant counterclaimed against the Ap-pellees alleging the following causes of action: (1) that the Appellees breached the terms of their employment by engaging in conduct contrary to the PPPM, (2) theft of YWLPK Community funds, and (3) mismanagement of YWLPK Community funds.[5] T.O. at 2-3. The Appellant counterclaimed an additional cause of action against Brian Laban only for libel and slander of the YWLPK community[6] T.O. at 3.
*452 The Appellant moved to dismiss the Ap-pellees’ original complaint for lack of subject matter jurisdiction, asserting that the Appellant enjoys sovereign immunity from suit. The trial court denied the Appellant’s motion to dismiss and granted the Appellees leave to file an amended complaint. Court Ruling 1/3/03 at 1. In their amended complaint, the Appellees changed their relief sought from compensatory and punitive damages to injunctive relief, namely, an order for the Appellant to hold a hearing on the Appellees’ termination. First Amended Complaint at 2; Second Amended Complaint at 2.
A jury trial was held on March 5-7, 2003 on the remaining causes of action: the Appellants’ due process -violation claim and the Appellee’s breach of contract counterclaim. T.O. at 3. Jury verdicts were rendered in favor of the Appellee on both claims. Id. The jury declined to award damages to the Appellee for the Appellants’ breach of contract. Id. At the close of the jury trial the Appellant’s counsel made a verbal request for ah opportunity to file the appropriate affidavits for attorney’s fees. Trial Tape 10 (3/7/03). The trial court did not award any fees at that time, but scheduled a hearing for May 28, 2003[7] on the issue of attorney’s fees. Id. The Appellant subsequently filed a written notice for an award of costs and fees on April 11, 2003 and later moved to amend its costs on May 3, 2003. At. the May 23, 2003 hearing, the trial court denied the Appellant’s request for costs and fees on the ground that the request did not conform to Rule 25 of the Hopi Indian Rules of Civil and Criminal Procedure (H.I.R.C.C.P.). Minute Entry; Appellant Brief (A.B.) at 3. The Appellant filed a Notice of Appeal of the trial court’s May 23, 2003 order on the grounds that the trial court erred in scheduling a hearing on costs and attorney’s fees and then failing to accept the Appellant’s written request, and that the trial court erred in failing to order attorney’s fees since the Appellant enjoys sovereign immunity from suit. A.B. at 3.
The Appellate Court has subject matter jurisdiction in this case because the trial court’s May 23, 2003 order denying the Appellants’ request for costs and attorney’s fees is a final order under Hopi Tribal Ordinance (H.T.O.) 21, § 1.2.5. The Appellant also timely filed the notice of appeal from the trial court’s order.

ISSUES PRESENTED ON APPEAL

The issues before this Court are whether sovereign immunity prevents Appellant from being sued for injunctive relief and whether the trial court erred in failing to award the Appellant costs and attorney’s fees.
The Hopi Appellate Court reviews questions of law de novo and accepts findings of facts made by the trial courts unless they are clearly erroneous. Randolph v. Hopi Tribe, 96AC00006 (1997) at 4; H.I.R.C.C.P. 37(h); see also Coin v. Mowa, AP-005-95 (1997) at 3.

DISCUSSION

I. Sovereign Immunity
Appellant argues that the trial court erred by not dismissing Appellee’s *453 claim because Appellant is barred from suit. It is well-established Hopi law that the Hopi Tribe may claim sovereign immunity in Hopi courts against claims brought by members of the Hopi Tribe, absent an unequivocal tribal waiver. Martin v. Hopi Tribe, AP-004-95 (1996) at 4-5. The Hopi Tribal Council affirmed in Hopi Resolution H-62-90 that “sovereign immunity is proper and should continue to be available in suits for damages against tribal governments as such is necessary to preserve public funds.” However, suits for injunc-tive relief are not barred by the doctrine of sovereign immunity. Youvella v. Dallas, 1 Am. Tribal Law 469, -- (1998). Indeed, Resolution H-62-90 provides that “suits for injunctive relief to enforce rights secured by ... the Indian Civil Rights Act can be maintained against Hopi Tribal government officials and such suits are not barred by the doctrine of sovereign immunity in Hopi Tribal Trial and Appellate Courts.”
The YWLPK community is a self-governing community of the Hopi Tribe established by a Hopi Community Charter approved by the Tribal Council through Hopi Resolution H-045-2000. Article 2, § 2 of the Community Charter provides that the Community as an entity of the Hopi Tribe, and its officers and employees are entitled to the same privileges and immunities by the Hopi Tribe. Therefore, since suits for injunctive relief are permissible against the Hopi Tribe pursuant to Resolution H-62-90, they may be brought against the Community. The Appellees amended their complaint against the Appellant seeking injunctive relief for violation of due process rights under the ICRA. Because they sought injunctive relief only and dropped then- prayer for damages, the trial court had subject matter jurisdiction to hear the Appellees’ claim and properly denied the Appellant’s motion to dismiss.
II. Costs and Attorney’s Fees
A. Costs
Appellant claims that the trial court erred in not awarding attorney’s fees and costs. Appellant advances a host of arguments in support thereof. We find none of them persuasive.
H.I.R.C.C.P. Rule 25(d) governs the awarding of costs. It provides that “unless the court shall otherwise direct, the court shall allow necessary costs and disbursements to the prevailing party ... as a matter of course. Such prevailing party shall file with the court a verified memorandum ... within five days of the entry [oí] judgment.” H.I.R.C.C.P. 25(d).
Final judgment in this case was entered on March 10, 2003. Counsel for the Appellant made a verbal request at the conclusion of the trial on March 7, 2003 for the “opportunity to file the requisite affidavit” for attorney’s fees. Trial Tape 10 (3/7/03). The trial court did not award costs or fees at that time. Id. The trial court acknowledged counsel’s request and set a date to hear oral argument on the issue of attorney’s fees for April 18, 2003, which was continued to May 23, 2003. Id. No verifiable memo on costs was filed within the five-day window of the March 10, 2003 entry of judgment. Rather, a Notice of Filing for Award of Costs and Attorneys Fees was filed on April 11, 2003.
Counsel for Appellant states he was confused by the trial court’s scheduling of the hearing and uses this confusion to explain the untimely filing for costs. Appellant argues that the trial court’s action in scheduling a hearing confused counsel such that counsel was unsure whether he should follow Rule 25(d) or the trial court’s instruction. A.B. at 8-9. However, it appears that Appellant is creating confusion *454 where there is none.[8] Upon review of the trial tape, it appears that counsel did not make a request for costs, but instead made a request for the “opportunity to file the requisite affidavit” for attorney’s fees (emphasis added). Therefore, even if the March 7, 2003 verbal request was permissible, it still fails to comply with Rule 25(d) because it was not a request for costs.
Appellant also states that the trial court somehow circumvented the rule by scheduling the hearing. Id. The trial court’s action in scheduling the hearing does not obviate the requirements of Rule 25(d). Rather, the trial judge, in the interest of administrative efficiency, simply scheduled a hearing on a matter he knew would require one—attorney’s fees. The trial court made no mention of costs or whether counsel was excused from the five day filing requirement.
Lastly, Appellant contends that the verbal request effectively tolled the five-day deadline of Rule 25(d).[9] The phrase “unless the court shall otherwise direct” confers limited discretion to the court only to modify the time or filing requirement. The court did not do so here. Rule 25(d) allows the trial court to deny costs unless the prevailing party complies with the five-day filing requirement and Appellant did not comply with the rule. Therefore, the trial court properly denied the Appellant’s request for costs.
B. Attorney’s Fees
 Appellant also appeals the trial court’s denial of attorney’s fees on the alternative grounds that the Appellees pursued their claim for purposes of harassment and the Appellees had no reasonable expectation of success on the merits of their claim since the Appellant enjoys sovereign immunity. H.I.R.C.C.P. Rule 25(e) provides for attorneys fees as follows:
The court shall not award attorneys fees unless such have been specifically provided for by a contract- ... or unless it reasonably appears that the case has been prosecuted for purposes of harassment only, or that there was no reasonable expectation of success on the party of the affirmatively claiming party.
The factual basis for an award of attorney’s fees is subject to the clearly erroneous standard of review. Moss v. Casa Grande Comm. Hosp., 1990 WL 245, at *9 (9th Cir.1990) (unpublished opinion).
There was no contract for attorney’s fees between the parties, therefore the first prong of Rule 25(e) is inapplicable. Whether the Appellants provided the Ap-pellees with due process, specifically a hearing, on .their termination, was a genuine issue in dispute. Thus, it was not clearly erroneous for the trial court to find that the Appellees’ suit was not brought for harassment purposes only.
While the Appellant enjoys sovereign immunity from suits for damages, it nonetheless is subject to suits for injunctive relief pursuant to Hopi Resolution H-62-90. The Appellees amended their complaint seeking injunctive relief only. Therefore, the trial court’s determination that the Appellees had a reasonable expectation of success on their due process claim was not dearly erroneous.

ORDER OF THE COURT

For the foregoing reasons, we hereby affirm the May 23, 2003 Order of the trial *455 court denying Appellant’s request for costs and attorney’s fees.
IT IS SO ORDERED.

. The Appellant adopted the PPPM on September 18, 2000 pursuant to Article 6, Section 3 of the Community Charter for YWLPK. Complaint at 4; Answer at 3.

. Specific findings were made that Joseph Laban created a hostile work environment that was intimidating, abusive and offensive for a female employee when he addressed her in an offensive manner, made gestures for her to sit on his lap, and told sex related jokes in the office. A.T.E. # E.

. Suspension period was September 17, 2001 to March 17, 2002.

. Appellees withdrew this cause of action (that the Appellant violated the PPPM) at the conclusion of their case in chief. T.O. at 1-2 n. 1-4.

. The Appellant moved to dismiss without prejudice the Theft of Funds and Mismanagement of Funds causes of actions when a crucial defense witness could not appear in court due to medical reasons. T.O. at. 2-3 n, 5-8. Appellees did not object and the trial court granted the motion, id.

. The trial court granted the Appellees' motion for directed verdict on the Libel and Slander cause of action on the grounds that *452 the Appellant had failed to offer any evidence on the elements that (1) the libelous business card had been published and seen by a third party and (2) the amount of any damages suffered as a result of the libelous conduct. T.O. at 3 n. 9.

. The hearing was originally scheduled for April 18, 2003, but it was continued to May 23, 2003. Trial Order (April 14, 2003).

. Counsel for any party always has a responsibility to a client and the court to seek clarification of a court’s directive where counsel is confused.

. This argument was only advanced after a question about tolling was asked by this Court.